UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| FREDDIE DEMARKA REED, III, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:25-CV-233-JD-JEM |
| RON NEAL, et al., | |
| Defendants. | |

OPINION AND ORDER

Freddie Demarka Reed, III, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Reed alleges that he suffers from an autoimmune disease called polymyositis, and he must receive infusions bi-weekly. On January 23, 2025, he went to the medical department to receive his infusion. The first attempt to set up the intravenous line failed. He indicates this has happened many times over the last two years. Staff routinely dig around to find a vein when trying to start the IV. As a result, he has developed anxiety when he sees needles. He also claims he has suffered nerve damage.

Reed asserts that the medical staff lack the proper training to deliver his infusions safely. He speculates that this is the first time any of the doctors or nurses caring for him have ever run IV lines or used IV pumps. He complains that staff leave the pump unattended until it runs dry, a practice Reed claims is dangerous. Sometimes the pump will stop working and it will beep for a long time before staff address the problem.

Reed also claims that the equipment used for his infusions is unclean and unsanitary. He believes he should be sent to an infusion center where trained specialists administer his medication in a safe, clean, private environment. Reed also thinks he should be treated by a rheumatologist.

Reed indicates he is suing 25 known defendants, but the complaint does not name 25 defendants. Reed's list of defendants includes only Warden Ron Neal, Assistant Warden Dawn Buss, Dr. Marthakis, Centurion Company, and Centurion Medical Staff.

Reed is suing Warden Neal and Assistant Warden Buss for failure to protect, failure to intervene, failure to supervise, and negligence. He has not, however, alleged that either Warden Neal or Assistant Warden Buss were personally involved in any wrongdoing. "A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008). There is no general respondeat superior liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone

2

else's." *Id*. at 596. Supervisors can also be held liable if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). Reed also has not alleged facts from which it could be plausibly inferred that these individuals were deliberately indifferent to his conditions or that they facilitated, approved, condoned, or turned a blind eye to his situation. *Matthews*, 675 F.3d at 708. Furthermore, negligence generally states no claim upon which relief can be granted in a § 1983 action. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994) ("Obduracy and wantonness rather than inadvertence or mere negligence characterize conduct prohibited by the Eighth Amendment."). Therefore, Reed will not be permitted to proceed against these defendants.

Reed names Dr. Marthakis as a defendant too. He alleges that she refused to treat him, but he provides no further information regarding the alleged refusal. He also alleges that she failed to intervene, failed to protect, failed to properly and safely treat, and failed to train or supervise her staff. He does not, however, describe any of his interactions with Dr. Marthakis. Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare

3

in the face of serious risks.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-98 (internal quotations and citations omitted). Here, Reed has not pled any facts from which it can be reasonable inferred that Dr. Marthakis was deliberately indifferent to Reed's serious medical needs or otherwise violated his constitutional rights. Furthermore, the problems Reed describes, such as inability to start an IV on the first attempt and not being immediately available when an IV is done or when the pump fails, do not suggest deliberate indifference on the part of any medical professional. At most, those things suggest negligence, which is insufficient to amount to deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (Negligence or

4

medical malpractice do not constitute deliberate indifference). While it is understandable that Reed would want the best care possible for his condition, including access to a rheumatologist and other highly trained specialists to perform his infusions, the Constitution does not guarantee Reed high quality care, and nothing in the complaint suggests that his condition cannot be appropriately managed at the facility in a manner that comports with the Eighth Amendment.

Reed is also suing Centurion's "Medical Staff," although he did not list the individual defendants by name. Reed has not stated any plausible claims against the "Medical Staff" as a whole. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (allegations that referred to "defendants" collectively without connecting specific defendants to specific acts were insufficient under federal pleading standards); *see also Henderson v. Wall*, No. 20-1455, 2021 WL 5102915, at *1 (7th Cir. Nov. 3, 2021) ("[B]y making allegations about large, indeterminate groups of defendants, [the plaintiff] deprived them all of proper notice of what they were accused of doing.").

In the body of the complaint, Reed does list Dr. Kim, Dr. Marne, Ms. Jen Selke, Ms. Fritter, Ms. Tiffany, Nurse Tonya, Nurse Diane, Indiana State Prison's medical director, and fifteen unknown nurses as defendants. His allegations against these individuals suffer from the same deficiencies as his allegations against Dr. Marthakis; he merely concludes that they violated his rights without describing any specific actions on the part of the named individuals. The complaint does not include facts from which it can be plausibly inferred that any of these individuals were deliberately indifferent to his medical needs.

5

Reed is suing Centurion because they offer their staff bonuses for keeping expenses low, which discourages referral to outside facilities. As noted by the Seventh Circuit, "administrative convenience and cost may be, in appropriate circumstances, *permissible factors* for correctional systems to consider in making treatment decisions." *Roe v. Elyea*, 631 F.3d 843, 863 (7th Cir. 2011) (emphasis in original). The Constitution is only violated when those factors are considered "*to the exclusion of reasonable medical judgment* about inmate health." *Id*. (emphasis in original). Reed's complaint does not allege facts that plausibly suggest that Centurion had a policy of considering cost savings to the exclusion of reasonable medical judgment. Thus, he cannot proceed on his claim regarding an alleged cost savings policy. *See Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009).

Reed's complaint indicates he is also suing because he was not referred to a vascular surgeon, but it is unclear who he is suing for not referring him to a vascular surgeon. Furthermore, he does not describe any symptoms or circumstances that would suggest this was necessary.

Similarly, Reed indicates he is unhappy with the care he has received for his diabetes, but he has not linked his claim to any particular defendant. He also has not described his symptoms, the care he received, or why he believes that care is inadequate.

Additionally, Reed complains that requests for mental health care were ignored. He mentions anxiety regarding needles, but he does not describe any other mental

healthcare needs. It is unclear when he sought care, what symptoms he was having, or who he believes is responsible for ignoring his request for care.

The amended complaint is short on facts, dates, and specifics about the medical treatment Reed has received. Based on what it does say, it is not plausible to infer that he is not receiving constitutionally adequate medical care. A complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (quotation marks, citations and footnote omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quotation marks and brackets omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

This complaint does not state a claim for which relief can be granted. If Reed believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil

7

cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) GRANTS Freddie Demarka Reed, III until **July 28, 2025**, to file an amended complaint; and

(2) CAUTIONS Freddie Demarka Reed, III if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on June 25, 2025

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT